**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **JAIME ABRAHAM PINONES, JR.,** | § § | |
| *Plaintiff,* | § § | |
| v. | § § | CASE NO. 3:20-CV-_____ |
| | § | JURY |
| **CITY OF TEXAS CITY, TEXAS, AND LARRY J. WILLIAMSON,** | § § | |
| *Defendants*. | § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HON. JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE:**

This is a civil rights action brought under 42 U.S.C. § 1983 concerning the actions of defendant, Cpl. Larry J. Williamson, who employed excessive force against plaintiff, Jaime Abraham Pinones, Jr., while arresting him. The actions and conduct of Cpl. Williamson were the result of a policy, practice, or custom on the part of defendant, City of Texas City, Texas.

**PARTIES**

1. Plaintiff, Jaime Abraham Pinones, Jr., is an individual who is a citizen of the State of Texas.

2. Defendant, Cpl. Larry J. Williamson ("Defendant Williamson"), an individual and a citizen of the State of Texas, may be served with process at his usual place of work, Texas City Police Department ("TCPD"), 1004 9th Avenue North, Texas City, Texas 77590.

3. Defendant, City of Texas City, Texas ("Defendant City"), is a home rule city that is established under the laws of the State of Texas. Defendant City owns, operates, manages, directs, and controls the TCPD which employs Defendant Williamson. Defendant City may be served with process by serving its city secretary, Rhomari Leigh, at 1801 9th Avenue North, Texas

City, Texas 77592.

## JURISDICTION

4.	This Court has jurisdiction over the lawsuit under 28 U.S.C §§ 1331 and 1343(a)(3) & (a)(4) because the suit arises under a federal civil rights statute, 42 U.S.C § 1983.

## CONDITIONS PRECEDENT

5.	All conditions precedent have been performed or have occurred.

## FACTUAL ALLEGATIONS

6.	On January 27, 2019, plaintiff, a mild-mannered mentally challenged individual with no criminal history, suffered personal injuries when Defendant Williamson used unreasonable, unnecessary, and excessive force against him during an investigatory detention.

7.	Specifically, on January 27, 2019, at approximately 3:45 P.M., Defendant Williamson and Officer Rachael Sbachnig of the TCPD were dispatched to the Magnolia Bend Apartments in reference to an alleged assault of Sharon Elizabeth Patterson, by her boyfriend, Jonathan Owen Williamson, a disabled veteran. The Magnolia Bend Apartments are located at 2902 Texas Avenue North, Texas City, Texas 77590. The TCPD dispatcher advised Defendant Williamson and Officer Sbachnig that the suspect was parked outside the apartments in a black SUV.

8.	Officer R. A. Cordona arrived on scene first and advised that he did not see a black SUV. However, Defendant Williamson, who was in his patrol unit traveling west in the 2500 block of Texas Avenue North en route to the scene at the time, observed a black 2010 Ford Explorer LL SUV in the Dee Best store parking lot. The vehicle was displaying a disabled veteran license plate, number 53156DV. The vehicle had a 1st Infantry Division sticker on the bumper. Dispatch advised Defendant Williamson that the vehicle returned as registered to the suspect.

9. In response, Defendant Williamson pulled into the Dee Best parking lot, unholstered his duty pistol, and approached the suspect vehicle. The suspect vehicle had dark tinted windows, but Defendant Williamson could see several people inside the vehicle. Defendant Williamson ordered the driver to open the door. When the driver opened the door, Defendant Williamson observed an AR-15 pistol with a magazine inserted in between the center console and the driver.

10. Defendant Williamson ordered the occupants to get their hands up and he ordered the driver to exit the vehicle. Defendant Williamson then took possession of the pistol. As he was taking the pistol out of the vehicle, Defendant Williamson observed a spare magazine in the passenger side door, rifle ammunition in the front floor board and pistol shell casings in the car. Based on these observations, Defendant Williamson believed there may have been another firearm in the vehicle.

11. The driver of the vehicle, Jonathan Owen Williamson, was walked to the back of the vehicle by Officer Sbachnig. Plaintiff was then seized for investigation by Defendant Williamson, who was acting in the course and scope of his employment as a patrol officer for the City of Texas City. Specifically, while the suspect driver was being walked to the back of the vehicle, Defendant Williamson made contact with the right front passenger, plaintiff herein, and asked him to exit the vehicle. Plaintiff complained that he had done nothing wrong and that he did not want to get out of the vehicle. Plaintiff then exited the vehicle but continued to express his innocence.

12. Defendant Williamson asked plaintiff to turn around and put his hands on the car. Plaintiff continued to verbally complain about his detention but complied with Defendant Williamson's command. During this interaction, the back-seat passenger, Kayla Nicole Santos,

informed Defendant Williamson that plaintiff had trouble understanding as he was mentally challenged.

13. Defendant Williamson heard Officer Sbachnig tell the suspect driver she was going to detain him in handcuffs. The suspect driver began to argue with Officer Sbachnig and turned around to face her. Defendant Williamson backed away from plaintiff to a spot where he could see Officer Sbachnig and the suspect driver while maintaining a visual on plaintiff. The suspect driver stated that he was not under arrest. Defendant Williamson then advised the suspect driver that he was being detained while they investigated further. Officer Sbachnig then detained the suspect driver in handcuffs.

14. Plaintiff then asked why he was being detained. At that time, Defendant Williamson unloaded the pistol, put the magazine in his pocket and placed the pistol down in the passenger seat. Defendant Williamson then asked plaintiff if he had any weapons and began to search him. Plaintiff informed Defendant Williamson that he did not possess any weapon and did not agree to be searched.

15. Defendant Williamson then used unreasonable, unnecessary, and excessive force during the investigatory search of plaintiff. Specifically, Defendant Williamson then swept plaintiff off of his feet causing him to crash to the ground in immense pain. As plaintiff was lying on the ground, Defendant Williamson squeezed him on his back against the ground to the point of not being able to breath, in order to ensure that plaintiff could not get up. Defendant Williamson then struck plaintiff in the face with a closed fist.

16. Defendant Williamson then closed the door to the vehicle, even though the third passenger, Santos, was still inside. After closing the door, Defendant Williamson then struck

plaintiff in the face with a closed fist again. Defendant Williamson then violently grabbed plaintiff by his arm, threw him over onto his back, and placed him into handcuffs.

17. The unreasonable, unnecessary, and excessive force used by Defendant Williamson caused plaintiff's injuries. Specifically, Defendant Williamson caused plaintiff to suffer substantial and material injuries, including a severe laceration to his nose which required professional medical treatment. Due to plaintiff suffering injuries, Defendant Williamson requested Texas City EMS and a police supervisor make the location.

18. After Santos exited the vehicle at Defendant Williamson's direction, Defendant Williamson completed the search of the vehicle but found no additional firearm. At the time of the investigatory search of plaintiff, Defendant Williamson was acting under color of the laws and regulations of the State of Texas and the City of Texas City, Texas.

19. After further investigation, it was determined that the suspect driver had not assaulted Patterson, but he was found to have a counterfeit $100 bill bearing serial number LB45440078L in his vehicle's glove box. The suspect driver stated that he received the bill from an individual known to him as "Kenneth" who lived at 2902 Texas Avenue North, Apt. No. 37, Texas City, Texas 77590.

20. The suspect driver further stated that "Kenneth" had sheets of the counterfeit bills and that he would cooperate with law enforcement in investigating him. Counterfeit bills matching the above referenced serial number had been circulating through Texas City, and the driver's information was provided to Detective Cpl. Baugh to assist in his on-going counterfeit investigation.

21. The suspect driver was given a case number for his records and released without charges. Santos was also released without charges. Plaintiff was checked by Texas City EMS and

2

was found fit for incarceration. Plaintiff was then transported to the Texas City Jail where he was booked in for allegedly committing the Class A misdemeanor offense of resisting arrest, detention, or transport, Texas Penal Code § 38.03(a), without further incident.

22. Plaintiff was later deemed ready to transport to the Galveston County Jail by the Texas City jailer. However, the Galveston County Jail refused to admit plaintiff due to the physical injuries he had suffered at the hands of Defendant Williamson. So, plaintiff was transported to Mainland Medical Center (MMC) in Texas City. After MMC provided medical care to plaintiff's wounds, which included stitching his lacerated nose, plaintiff was transported to the Galveston County Jail. After plaintiff was booked into the jail, he was eventually released on pretrial release on January 29, 2019.

23. On March 7, 2019, the State of Texas filed a criminal complaint and information against plaintiff alleging he had committed the Class A misdemeanor offense of resisting arrest, detention, or transport, in violation of Texas Penal Code § 38.03(a). On June 29, 2020, the information was voluntarily dismissed on the State's motion, thereby ending plaintiff's prosecution for all matters arising out of the facts of his interaction with Defendant Williamson on January 27, 2019.

24. Defendant City had a custom in place that enabled its agents and employees to act with deliberate indifference to the constitutional rights of individuals with mental disabilities. Specifically, Defendant City had a custom of tolerating misconduct by its police officers against individuals with mental disabilities and encouraging misconduct against such individuals by failing to adequately supervise or discipline its police officers regarding interactions with mentally disabled individuals. Such a custom was shown in this case by Defendant City's patrol supervisor, Sgt. R. Scott, as he failed to perform any investigation into the use of force by Defendant

Williamson against plaintiff during the course of his investigatory search on January 27, 2019.

## CAUSES OF ACTION

### Count 1 – Use of Excessive Force by Defendant Williamson

25. Plaintiff incorporates by reference paragraphs 1 – 24 herein.

26. Defendant Williamson's use of unreasonable, unnecessary, and excessive force violated plaintiff's clearly established constitutional rights, and was not objectively reasonable in light of the circumstances. Specifically, mentally challenged individuals have the clearly established right not to have excessive force used against them during an investigatory search or seizure.

27. Defendant Williamson acted willfully, deliberately, maliciously, or with reckless disregard for plaintiff's clearly established rights, because even after Santos informed him that plaintiff was mentally challenged, he continued to exert unreasonable, unnecessary, and excessive force against plaintiff.

### Count 2 – *Monell* Liability Against Defendant City

28. Plaintiff incorporates by reference paragraphs 1 – 24 herein.

29. Defendant City's policy or custom enabled its agents and employees to act with deliberate indifference to plaintiff's constitutional rights. Specifically, Defendant City tolerates misconduct by its police officers against individuals with mental disabilities and encourages misconduct against such individuals by failing to adequately supervise or discipline its police officers regarding interactions with mentally disabled individuals. Such a custom was shown in this case by Defendant City's patrol supervisor, Sgt. R. Scott, as he failed to perform any investigation into the use of force by Defendant Williamson against plaintiff during the course of his investigatory stop and seizure on January 27, 2019.

30. The violations of plaintiff's known constitutional rights under the Fourteenth Amendment to the United States Constitution, plaintiff's damages, and the conduct of Defendant Williamson were directly and proximately caused by the actions and/or inactions of Defendant City which has encouraged, tolerated, or ratified his unlawful actions, and has been deliberately indifferent to the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of: (a) the legal cause to stop, detain, arrest, and criminally charge a mentally disabled citizen; (b) the proper exercise of police powers, including but not limited to the making of an arrest, the use of force, and the bringing of criminal charges against mentally disabled citizens; (c) the failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct related to interactions with mentally disabled citizens; (d) the failure of police officers to follow established policies, procedures, directives, and instructions regarding arrests, the use of force, and the institution of criminal charges under such circumstances as presented by this case; (e) the failure to properly sanction or discipline officers who are aware of and conceal and/or aid and abet violations of constitutional rights of mentally disabled citizens by other Texas City police officers; and (f) the practice among Texas City police officers of instituting false charges against individuals with the intention of precluding such individuals from instituting civil claims.

**DAMAGES**

31. As a direct and proximate result of defendants' actions, plaintiff suffered the following injuries and damages: (a) economic damages related to his arrest and subsequent defense of his criminal case; (b) medical expenses in the past and future; (c) mental anguish in the past and future; (d) lost earnings; (e) physical pain and suffering; and (f) punitive damages.

## JURY DEMAND

32.     Plaintiff asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## ATTORNEY FEES & COSTS

33.     Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).

## PRAYER

34.     For these reasons, plaintiff asks for judgment against defendants, joint and severally, for the following: (a) economic damages related to his arrest and subsequent defense of his criminal case; (b) medical expenses in the past and future; (c) mental anguish in the past and future; (d) lost earnings; (e) physical pain and suffering; (f) punitive damages; (g) reasonable attorney's fees; (h) prejudgment and postjudgment fees; (i) costs of suit; and (j) all other relief the Court deems appropriate.

Respectfully submitted,

By: *Julia C. Hatcher*
JULIA CATHERINE HATCHER
State Bar No.: 24004692
juliachatcher@gmail.com
1622 Campbell Lane
Galveston, TX 77551
Tel.:   (409) 599-6685
Fax:   (281) 715-4284

OF COUNSEL:
MARK ARONOWITZ

ATTORNEY IN CHARGE FOR PLAINTIFF,
JAIME ABRAHAM PINONES, JR.