United States District Court
Southern District of Texas

**ENTERED**

October 26, 2021

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| JAIME ABRAHAM PINONES, JR., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:21-cv-00001 |
| | § | |
| CITY OF TEXAS CITY, TEXAS, ET AL., | § | |
| | § | |
| | § | |
| Defendants. | § | |

## ORDER AND OPINION

Before me is an Amended Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendant City of Texas City, Texas ("Texas City"). *See* Dkt. 24. Having reviewed the briefing, the record, and the applicable law, I **GRANT** the motion.

## BACKGROUND

The facts in this section are drawn from the Plaintiff's Second Amended Complaint, with well-pleaded factual allegations taken as true for purposes of the pending motion.

On January 27, 2019, the Texas City Police Department ("TCPD") dispatched officers to the Magnolia Bend Apartments in Texas City to investigate the alleged assault of Sharon Elizabeth Patterson ("Patterson"). Dispatch provided the responding officers with the following information: (1) the alleged suspect was Patterson's boyfriend, Jonathan Owen Williamson ("Suspect Williamson"); (2) Suspect Williamson was a disabled veteran; and (3) Suspect Williamson was in a black SUV parked outside the apartment complex.

The first TCPD officer on the scene did not see the described black SUV. However, two different officers, Larry J. Williamson ("Officer Williamson") and Rachael Sbachnig ("Officer Sbachnig"), encountered a black 2010 Ford Explorer SUV in a nearby store parking lot with a disabled veteran license plate and 1st

Infantry Division bumper sticker. After the officers called the license plate in, dispatch informed them that the vehicle was registered to Suspect Williamson.

With his weapon unholstered, Officer Williamson approached the vehicle, which he could see held several passengers. Officer Williamson ordered the driver, Suspect Williamson, to open the door. When the driver complied, Officer Williamson saw "an AR-15 pistol with a magazine inserted in it in between the center console and the driver." Dkt. 23 at 3. Officer Williamson ordered all the vehicle's occupants to raise their hands and Suspect Williamson to exit the vehicle. After Suspect Williamson exited the vehicle, Officer Sbachnig detained him towards the back of the vehicle. Meanwhile, Officer Williamson took possession of the AR-15 pistol and observed additional ammunition in the vehicle, which suggested that there might be an additional firearm in the vehicle.

Officer Williamson then ordered Plaintiff Jaime Abraham Pinones, Jr. ("Pinones"), who was in the front passenger seat, to exit the vehicle and put his hands on the vehicle. Pinones complained about Officer Williamson's commands, but he complied. During this interaction, the backseat passenger, Kayla Nicole Santos ("Santos"), informed Officer Williamson that Pinones had trouble understanding verbal commands because he was mentally disabled. Officer Williamson then began to search Pinones. During the search, Pinones alleges that Officer Williamson violated his constitutional rights as follows:

2

15.     Defendant Williamson then used unreasonable, unnecessary, and excessive force during the investigatory search of plaintiff. Specifically, Defendant Williamson then swept plaintiff off of his feet, causing him to crash to the ground in immense pain. As plaintiff was lying on the ground, quivering in pain, Defendant Williamson squeezed him on his neck against the ground, to the point where Plaintiff was not able to breath, using the same chokehold technique that Officer Derek Chauvin used to kill George Floyd, all to ensure that plaintiff could not get up. Defendant Williamson then struck plaintiff in the face with a closed fist as Plaintiff lie helplessly on the ground choking to death.

16.     Defendant Williamson then closed the door to the vehicle, even though the third passenger, Santos, was still inside. After closing the door, Defendant Williamson then struck plaintiff in the face with a closed fist again. Defendant Williamson then violently grabbed plaintiff by his arm, threw him over onto his back, and placed him into handcuffs, all while plaintiff gasped for air to keep from dying from asphyxiation.

17.     The unreasonable, unnecessary, and excessive force used by Defendant Williamson caused plaintiff's injuries. Specifically, Defendant Williamson caused plaintiff to suffer substantial and material injuries, including a severe laceration to his nose, which required professional medical treatment. Because of Plaintiff's obvious physical injuries caused by Defendant Williamson, Defendant Williamson requested Texas City EMS and a police supervisor to make the location.

*Id.* at 5.

In the end, Texas City released Suspect Williamson and Santos without charges. Pinones, on the other hand, received medical treatment and was booked for allegedly committing the Class A misdemeanor offense of resisting arrest, detention, or transport in violation of Texas Penal Code § 38.03(a). Texas City ultimately dropped the charges against Pinones.

On January 5, 2021, Pinones filed suit under 42 U.S.C. § 1983 against Officer Williamson and Texas City. Pinones alleges that: (1) Officer Williamson arrested

3

him using excessive force in violation of his constitutional rights; and (2) Officer Williamson's conduct "was the result of a policy, practice, or custom on the part of [Texas City] in failing to implement and train its officers . . . in the Police-Mental Health Collaboration (PMHC) program such as the Crisis Intervention Training (CIT) Program." *Id.* at 1.

Texas City now moves to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(6), arguing that Pinones has failed to allege any facts sufficient to demonstrate *Monell* liability.

## LEGAL STANDARD

Rule 12(b)(6) allows for the dismissal of a complaint for the "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion, I must "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019). I "do not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Id.* at 336–37 (cleaned up). Because a complaint must be liberally construed in favor of the plaintiff, a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted. *See Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).

## PINONES FAILED TO STATE A CLAIM AGAINST TEXAS CITY

A person may sue a municipality that violates his or her constitutional rights "under color of any statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). To establish

municipal liability under § 1983, "a plaintiff must show the deprivation of a federally protected right caused by action taken pursuant to an official municipal policy." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quotation omitted). A plaintiff must identify "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

Pinones asserts § 1983 liability against Texas City predicated on two theories: (1) an unconstitutional policy or custom of tolerating illegal misconduct against individuals with mental disabilities; and (2) failure to train/supervise. I address each claim in turn.

## A.    FAILURE TO PROMULGATE POLICIES

Pinones first claims that Texas City's failure to implement the Police-Mental Health Collaboration ("PMHC") and Crisis Intervention Training ("CIT") programs amounts to a "policy, practice, or custom which enabled its agents and employees to act with deliberate indifference to [his] constitutional rights." Dkt. 30 at 7. Plainly stated, Pinones claims that Texas City failed to promulgate a municipal policy governing police interaction with mentally disabled individuals.

The Fifth Circuit has explained that to serve as the basis for § 1983 liability, the failure to promulgate a municipal policy must amount to an intentional choice, not merely an unintentionally negligent oversight. *See Evans v. City of Marlin*, 986 F.2d 104, 108 (5th Cir. 1993). The failure to adopt a policy rises to the level of deliberate indifference "when it is obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992). In other words, "to establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual

or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program." *Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011) (cleaned up). To make these showings, "[a] pattern of similar constitutional violations . . . is ordinarily necessary." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).[1] "When a plaintiff attempts to show a pattern of conduct, the conduct must be sufficiently similar to prove deliberate indifference." *Gallion v. Hinds Cnty.*, No. 3:12CV736-DPJ-FKB, 2015 WL 3409460, at *4 (S.D. Miss. May 27, 2015). "Without cabining [failure-to-promulgate-policy claims] in this manner . . ., a standard less stringent than deliberate indifference would be employed, and a [failure-to-promulgate-policy claim] would result in de facto *respondeat superior* liability." *Porter*, 659 F.3d at 447 (quotations omitted).

The primary issue here is that Pinones has not even attempted to demonstrate that Texas City engaged in a pattern of constitutional violations sufficient to prove deliberate indifference. Pinones's allegation that Texas City failed to implement the PMHC and CIT programs is unsupported by any other factual allegation that tends to show objective deliberate indifference. Crucially, Pinones failed to allege that Texas City's acts or omissions have ever resulted in the

---

[1] "[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable." *Brown v. Bryan Cnty.*, 219 F.3d 450, 462 (5th Cir.2000). "However, this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Valle*, 613 F.3d at 542. Pinones has not alleged or argued that the extremely narrow single incident exception applies, much less shown that "the *highly predictable consequence* of a failure to train would result in the specific injury suffered." *Payton v. Town of Maringouin*, No. CV 18-563-JWD-EWD, 2021 WL 2544416, at *28 (M.D. La. June 21, 2021) (quoting *id.* at 549). But, even if Pinones had argued for application of the single incident exception, such would be inapplicable here because this case is unlike the seminal cases where the Supreme Court and Fifth Circuit have found the single incident exception applicable. *See Payton*, 2021 WL 2544416 at *28 n.11 (discussing *Connick*'s "hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force" and *Valle*'s "abundance of evidence about the proclivities of the particular officer involved in the use of excessive force").

use of excessive force against an individual with mental disabilities other than himself. In other words, Pinones has failed to allege sufficient facts to infer that Texas City had actual or constructive knowledge of the alleged danger posed by its failure to implement the PMHC and CIT programs. Thus, Pinones has failed to allege that Texas City acted with deliberate indifference.

Furthermore, Pinones has failed to show a nexus between the alleged failure to adopt policies governing police interaction with mentally disabled individuals and his complained-of injuries. Indeed, his pleadings wholly fail to consider the possibility that Officer Williamson used force on him for reasons of his own, unconstrained and uninfluenced by any policies or lack of policies which Texas City may have had; instead, Pinones simply assumes that a policy or lack thereof was necessarily the cause of Officer Williamson's use of force. Simply stated, on the issue of causation, Pinones has offered nothing more than a conclusory statement, devoid of further factual enhancement. This falls short of Pinones's obligations under Rule 12(b)(6). *See Benfield*, 945 F.3d at 336–37.

## B.   FAILURE TO TRAIN/SUPERVISE

"The standard for failure to supervise under § 1983 is the same as that for failure to train under § 1983." *Bartee v. Harris Cnty.*, No. 4:16-CV-2944, 2018 WL 8732519, at *6 (S.D. Tex. Mar. 5, 2018). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. "But a decision by a local government not to train certain employees about their legal duty to avoid violating citizens' rights may in some circumstances rise to the level of an official government policy for purposes of Section 1983." *Taylor v. Hartley*, 488 F. Supp. 3d 517, 535 (S.D. Tex. 2020).

To establish a failure-to-train/supervise claim, Pinones must prove that (1) Texas City failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to train or supervise and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted

deliberate indifference to the Pinones's constitutional rights. *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021).

Municipal liability doesn't attach merely because "a particular officer may be unsatisfactorily trained" or "an otherwise sound program has occasionally been negligently administered." *City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989). "The Fifth Circuit directs with the first element that the focus must be on the adequacy of the training program in relation to the tasks the particular officer must perform. And so to defeat a motion to dismiss, the plaintiff must allege with specificity how the training program is defective in this regard." *Taylor*, 488 F. Supp. 3d at 535 (cleaned up).

Pinones fails to meet his pleading burden on the first and third elements. In the Second Amended Complaint, Pinones repeatedly alleges that Officer Williamson's training was defective because it didn't include adequate instruction on how to deal with mentally ill or disabled individuals. Pinones specifically identifies two programs, which are allegedly offered in Houston and throughout the country, that he believes Texas City should have implemented to address the issue: the PMHC and CIT programs. In focusing his discussion on these two non-Texas City programs, Pinones neither alleges specific facts about Texas City's training protocols nor describes any deficiencies in the program considering Officer Williamson's assigned duties. In other words, Pinones hasn't identified a specific Texas City training program or shown how it is insufficient. This is inadequate to meet the first element. *See Taylor*, 488 F. Supp. 3d at 536. "And without a sufficiently specified training program or defects, [Pinones] necessarily hasn't shown the causation required by the third element." *Id.*

Pinones has also failed to satisfy the second element. As described above, to show deliberate indifference, Pinones must allege a pattern of similar constitutional violations. But Pinones has not alleged a pattern of similar constitutional violations by other allegedly untrained employees. Instead, he seeks to use Officer Williamson's conduct—and only Officer Williamson's conduct—to

state his claim. In framing his argument this way, Pinones has not alleged facts sufficient to demonstrate that his injuries were the highly predictable consequence of sending Officer Williamson to investigate Patterson's alleged assault. Thus, Pinones has not satisfied the deliberate-indifference element.

In sum, because Pinones has failed to meet all three elements, the failure-to-train/supervise claim must be dismissed.

## CONCLUSION

For the reasons explained above, the Amended Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 24) is **GRANTED**. Texas City is dismissed from this case.

SIGNED this 26th day of October 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE